UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------ X

SHEET METAL WORKERS' NATIONAL PENSION
FUND; NATIONAL ENERGY MANAGEMENT
INSTITUTE COMMITTEE FOR THE SHEET METAL
AND AIR CONDITIONING INDUSTRY; SHEET
METAL OCCUPATIONAL HEALTH INSTITUTE
TRUST; INTERNATIONAL TRAINING INSTITUTE
FOR THE SHEET METAL AND CONDITIONING
INDUSTRY; and NATIONAL STABILIZATION
AGREEMENT OF THE SHEET METAL INDUSTRY
FUND,

        Plaintiffs,

  -against-

VARDARIS TECH INC., and ELIAS RIZOS, as an
individual,

        Defendants.

------------------------------------------------------------------ X

13-CV-5286 (ARR)

<u>NOT FOR ELECTRONIC
OR PRINT PUBLICATION</u>

<u>OPINION AND ORDER</u>

ROSS, United States District Judge:

       Plaintiffs, five multi-employer benefit funds, brought this action under the Employee Retirement Income Security Act of 1974 ("ERISA") against corporate defendant, Vardaris Tech Inc., and its sole owner, Elias Rizos, in his individual capacity. Plaintiffs now move for summary judgment, asserting that defendants failed to make contractually required contributions to the funds, and that plaintiffs are entitled to damages as a matter of law. Defendants make three arguments in response to plaintiffs' motion. First, both defendants assert that the only contract between the parties expired on July 31, 2011, and thus plaintiffs are not entitled to payment for any period beyond that date. Second, Rizos contends that Vardaris' financial situation, rather than his deliberative decision-making, determined whether or not the necessary payments were

1

made to the funds. Third, both defendants contend that even if plaintiffs' motion for summary judgment is granted with respect to liability, plaintiffs' requests for interest, liquidated damages, and attorney's fees are excessive. For all of the reasons set forth below, plaintiffs' motion for summary judgment with respect to defendants' liability is granted. Pursuant to 28 U.S.C. § 636(b)(1)(B), I respectfully refer the issue of damages to the Honorable Magistrate Judge Robert Levy to issue a report and recommendation.

## BACKGROUND

Defendant Elias Rizos is the owner and sole shareholder of a closely held corporation, Vardaris Tech Inc. ("Vardaris"). Dep. of Elias Rizos, Ex. M to Decl. of Jeffrey S. Dubin in Supp. of Mot. for Summ. J. ("Rizos Dep."), Dkt. #42, 4:16. Vardaris performs general construction work and frequently employs unionized workers. Id. at 5:10, 8:9-14. While Vardaris employs a full-time bookkeeper, only Rizos has the authority to sign checks on behalf of the company or transfer money between company bank accounts. Id. at 6:4-13, 16:8-23, 19:3-17.

On August 1, 2009, Vardaris entered into a collective bargaining agreement ("CBA") with the Sheet Metal Workers International Association Local Union No. 28 and the Sheet Metal and Air Conditioning Association of New York City. Mem. of Understanding by and between Sheet Metal Workers' International Association Local Union No. 28 and Vardaris Tech Inc., Ex. K to Decl. of Jeffrey S. Dubin in Supp. of Mot. for Summ. J. ("Mem. of Understanding"), Dkt. #42. Under the CBA, Vardaris was required to make contributions to the five plaintiff benefit funds. Collective Bargaining Agreement, August 1, 2009-July 31, 2011, Ex. D to Decl. of Jeffrey S. Dubin in Supp. of Mot. for Summ. J. ("CBA I"), Dkt. #42, 40-41. The CBA incorporated by reference the various foundational contracts—the "agreements and declarations of trust"—of each of the five funds. Id. at 40-42. These funds all qualify as "employee benefit plans" under

ERISA. See 29 U.S.C. § 1002(2)-(3). Following its expiration, the CBA was automatically renewed by virtue of an "evergreen clause."[1] CBA I at 54.

Due to financial struggles, Vardaris failed to make many of the required payments. Decl. of Elias Rizos in Opp'n to Pls. Mot. for Summ. J. ("Rizos Decl."), Dkt. #44 ¶ 5. Plaintiffs brought suit on September 20, 2013, seeking to recover $6,799.03 in unpaid contributions, as well as interest, liquidated damages, pre-litigation liquidated damages, attorney's fees and costs. Compl., Dkt. #1 at 11. Over the course of the litigation, defendants have paid all but $0.26 of the unpaid contributions, but have maintained that they do not owe any of the additional damages plaintiffs seek. Rizos Decl. ¶¶ 6-7. Plaintiffs now move for summary judgment, seeking the remaining $0.26 and $34,032.16 in interest, liquidated damages, pre-litigation damages, attorney's fees, and costs that have accumulated throughout the litigation.

## STANDARD OF REVIEW

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The function of the court is not to resolve disputed issues, but to determine whether there is a genuine issue to be tried. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986) (citing First Nat'l Bank of Arizona v. Cities Service Co., 391 U.S. 253, 288-89 (1989)). "While genuineness runs to whether disputed factual issues can 'reasonably be resolved in favor of either party,' materiality runs to whether the dispute matters, i.e., whether it concerns facts that can affect the outcome under the applicable substantive law." Graham v. Henderson, 89 F.3d 75, 79 (2d Cir. 1996) (citing Anderson, 477 U.S. at 250).

In assessing whether summary judgment is appropriate, the court considers "the

---

[1] Defendants contend that they never renewed the August 1, 2009 CBA and, in turn, had no obligation to make payments to the benefit funds past July 31, 2011.

pleadings, depositions, answers to interrogatories and admissions on file, together with any other firsthand information including but not limited to affidavits." Nnebe v. Daus, 644 F.3d 147, 156 (2d Cir. 2011) (quoting In re Bennett Funding Grp., Inc., 336 F.3d 94, 99 (2d Cir. 2003)); see Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The moving party carries the burden of proving that there is no genuine dispute respecting any material fact and "may obtain summary judgment by showing that little or no evidence may be found in support of the nonmoving party's case." Gallo v. Prudential Residential Servs., 22 F.3d 1219, 1224 (2d Cir. 1994) (citing Celotex, 477 U.S. 317 at 325). Once this burden is met, in order to avoid the entry of summary judgment, the non-moving party "must come forward with specific facts showing that there is a genuine issue for trial." LaBounty v. Coughlin, 137 F.3d 68, 73 (2d Cir. 1998). In reviewing the record before it, "the court is required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." McLee v. Chrysler Corp., 109 F.3d 130, 134 (2d Cir. 1997).

## DISCUSSION

A. Vardaris' Liability Under CBA I

There is no dispute as to Vardaris' liability under CBA I, which ran from August 1, 2009 to July 31, 2011. Rizos does not dispute that he entered into that agreement on behalf of his company and that Vardaris is liable for any outstanding balance that accrued during that time frame. See Rizos Decl. ¶¶ 4, 6 (acknowledging that Vardaris was bound by the CBA until July 31, 2011 and that he would have arranged for a payment plan immediately had he "been given notice of the delinquent benefits" ). With regard to CBA I, Vardaris disputes only plaintiffs' claim for liquidated damages, interest, costs, and legal fees which have accrued as a result of Vardaris' delinquent payments. Id. ¶¶ 6-9.

B. <u>Vardaris' Liability Under the Renewed CBA</u>

Defendants assert that summary judgment is not appropriate with respect to any damages plaintiffs claim they are owed past the expiration of CBA I on July 31, 2011. Plaintiffs have produced two CBA agreements, one for the period of August 1, 2009 to July 31, 2011, and another for the period of September 15, 2011 to July 31, 2014. See CBA I; Collective Bargaining Agreement, September 15, 2011-July 31, 2014, Ex. E to Decl. of Jeffrey S. Dubin in Supp. of Mot. for Summ. J. ("CBA II"), Dkt. #42. The parties to both agreements are the Sheet Metal Workers International Association Local Union No. 28, the Sheet Metal and Air Conditioning Association of New York City, and "SMANCA of Long Island, Inc. and those employers who subscribe thereto." Id. While Rizos claims that he has never heard of "SMANCA of Long Island," Rizos Dep. at 27:14-16, plaintiffs have produced a "Memorandum of Understanding," signed by Rizos, affirming that Vardaris was to be bound by the original, August 1, 2009 agreement. See Mem. of Understanding.

While plaintiffs have not produced another Memorandum of Understanding for CBA II, CBA I contained an "evergreen clause," providing for automatic renewal of the agreement. The clause states that:

> This Agreement and attachments hereto shall become effective as of the first day of August, 2009, and remain in full force and effect until the thirty-first day of July, 2011, and shall continue in force from year to year thereafter unless written notice of reopening is given no fewer than ninety (90) days prior to the expiration date.

CBA I at 54. Such clauses are commonly enforced, see, e.g., Long Island Head Start Child Dev. Servs. v. NLRB, 460 F.3d 254, 257 (2d Cir. 2006) (discussing whether defendant took proper action to terminate otherwise enforceable evergreen clause), and defendants have offered no evidence to dispute the clause's binding effect over them. Defendant Rizos tries to refute plaintiffs' evidence that Vardaris is bound by CBA II by insisting that he "never signed a

renewal or extension of the CBA," Rizos Decl. ¶ 4, but he did not need to sign such a renewal or extension for the renewed CBA to become binding over Vardaris. The evergreen clause clearly states that the CBA was to be automatically renewed unless written notice was provided at least 90 days prior to the expiration date. Without having provided such notice, Vardaris remained bound by the CBA, regardless of whether or not Rizos ever signed a renewal.

Further, Vardaris' behavior contradicts its claim that the company was not bound by the renewed CBA. Plaintiffs have offered evidence that Vardaris made multiple payments to the plaintiffs over the course of 2013, indicating that it was aware that it was still bound by the terms of the CBA. See Attach. 1 to Decl. of Amy E. Strang, Dkt. #43. In addition, Vardaris has paid all but $0.26 of the principal allegedly owed to plaintiffs, further affirming that the defendants do not truly dispute that they were bound to make payments to the funds over the course of CBA II. See Decl. of Jeffrey S. Dubin in Supp. of Mot. for Summ. J., Dkt #42, ¶¶ 37-39.

Plaintiffs have met their burden of showing that "little or no evidence may be found in support of the nonmoving party's case" with regard to Vardaris' liability under CBA II. Because Rizos did not need to sign a renewal for the CBA to remain in effect, Vardaris has not come forward with any specific facts that create a genuine issue for trial. Therefore, plaintiffs' motion for summary judgment is granted with respect to all of its claims against defendant Vardaris.

C. <u>Defendant Rizos' Personal Liability</u>

Plaintiffs also seek to hold Defendant Rizos personally liable for his company's delinquent payments by arguing that he is a fiduciary over the unpaid contributions owed to the various benefit funds. Under ERISA, "a person is a fiduciary with respect to a plan to the extent . . . [that] he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or

6

disposition of its assets." 29 U.S.C. § 1002(21)(A). Plaintiffs argue that any payments that Rizos was contractually required to make to the fund became plan "assets" once those payments were due. Therefore, plaintiffs contend that when Rizos decided not to contribute to the funds when the payments became due, he was exercising discretionary control over a plan asset (the unpaid money), making him a fiduciary as defined by ERISA. The Second Circuit has adopted a two-part test for determining when an individual becomes a fiduciary as a result of his company's unpaid contributions. See In re Halpin, 566 F.3d 286, 289 (2009). First, the court must determine whether the unpaid contributions were "plan assets." Id. Second, if the unpaid money is determined to be a "plan asset," the court must decide whether the defendant "exercised a level of control over those assets sufficient to make him a fiduciary." Id.

### 1. Whether unpaid contributions were plan assets

In Halpin, the Second Circuit established that, absent contractual language to the contrary, unpaid contributions to an ERISA plan are not considered assets of the plan. See id. at 290. However, in reaching this conclusion, the court acknowledged that "[the parties] were free to contractually provide for some other result," id., and numerous district courts have allowed parties to undo that presumption by contractual agreement. See, e.g., Sheet Metal Workers' Nat'l Pension Fund v. AUL Sheet Metal Works Inc., No. 10-cv-1371(KBF), 2012 WL 32237, at *4 (S.D.N.Y. Jan. 5, 2012) ("when an employer's contribution becomes an asset of an ERISA fund must be determined by reference to the rights and obligations created by the underlying wage agreement.") (internal citations and quotation marks omitted); Trustees of the Rd. Carries Local 707 Welfare Fund v. Goldberg, No. 08-CV-0884(RRM), 2009 WL 3497493, at *3 (E.D.N.Y. Oct. 28, 2009) ("While unpaid employer contributions are not ordinarily assets of the plan, the parties to an agreement are free to provide otherwise.") (internal citations omitted).

7

Here, it is clear that the parties have contracted to make unpaid contributions the assets of the plaintiff benefit funds. Both CBAs provide that:

> Employer contributions are considered assets of the respective Funds and title to all monies paid into and/<u>or due and owing</u> said Funds shall be vested in and remain exclusively in the Trustees of the respective Funds. The Employer shall have no legal or equitable right, title or interest in or to any sum paid by or <u>due from</u> the Employer.

CBA I at 40, 42; CBA II at 43-44 (emphasis added). This prospective language is unambiguous in its intent to make any unpaid contributions assets of the benefit funds the moment they are owed, regardless of whether they have actually been paid by the employer. This interpretation of the parties' contractual language is consistent with the conclusions of other district courts in cases where plan assets or contributions have been defined as money "due and owing," or with similar prospective, future-tense terms. See <u>Sheet Metal Workers' Nat'l Pension Fund</u>, 2012 WL 32237, at *4 (defining unpaid contributions as "due and owing"); <u>Trustees of the Rd. Carriers Local 707 Welfare Fund</u>, 2009 WL 3497493, at *3 (defining plan assets as "assets derived from all employer contributions received and <u>to be received</u>") (emphasis in original); <u>Trustees of the Plumbers Local Union No. 1 Welfare Fund, Additional Sec. Benefit Fund, Vacation & Holiday Fund, Trade Educ. Fund & 401(k) Sav. Plan v. Philip Gen. Constr.</u>, No. 05-CV-1665(NG), 2007 WL 3124612, at *5 (E.D.N.Y. Oct. 23, 2007) (defining plan assets as "the sums of money that have been or will be paid or which are due and owing"). Thus, Vardaris' delinquent payments became assets of the plaintiff benefit funds as soon as they became due.

### 2. Whether Rizos "exercised control" over plan assets

Having determined that Vardaris' unpaid contributions were plan assets, the court must determine if Rizos exercised control over the plan assets such that he would qualify as a plan fiduciary. Under 29 U.S.C. § 10002(21)(A), a person is a plan fiduciary if "he exercises any

8

discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets." In LoPresti v. Terwilliger, the Second Circuit was faced with the question of whether two individual owners of a corporation were plan fiduciaries for ERISA purposes. 126 F.3d 34, 40 (2d Cir. 1997). The court drew a distinction between the two owners, finding that only one qualified as a fiduciary because only he "decided which creditors were to be paid out of the company's general account, and when those creditors were to be paid." Id. (internal citation omitted). The court acknowledged that the other, non-fiduciary owner was authorized to sign checks on the company's behalf and "had some general knowledge that deductions were made from employees' wages," but found that he could not be considered a fiduciary as he had "no responsibility for determining which of the company's creditors would be paid or in what order." Id. (internal citation and quotation marks omitted).

Unlike the non-fiduciary owner of the defendant corporation in LoPresti, Rizos was the only person at Vardaris who had control over who is to be "paid out of the company's general account." Rizos has admitted that only he has the authority to sign a check on Vardaris' behalf or the authority to transfer money between company bank accounts. Rizos Dep. at 16:8-23, 19:3-17. Rizos's sole financial control over Vardaris is further corroborated by Vardaris' bookeeper. See Dep. of Eleni Makrigiannis, Ex. N to Decl. of Jeffrey S. Dubin in Supp. of Mot. for Summ. J., Dkt. #42, 11:6-22, 15:8-16:25. As Rizos is the only person who had discretionary control over the company's money, it is apparent that only he could decide when to make contributions to the benefit funds, and how much to contribute. Therefore, as he had discretionary control over plan assets, Rizos qualifies as a fiduciary under ERISA.

Moreover, Rizos does not dispute that he had sole control over Vardaris' finances. Rather, he contests plaintiffs' characterization that he "<u>willfully</u> chose not to pay the Plaintiff outstanding dues." Rizos Decl. ¶ 5. (emphasis added). In his declaration, Rizos explains that Vardaris underwent a severe financial hardship from 2011 to 2013 and that "if Vardaris had the financial resources to pay benefits at the time that the work was performed, then it would have." Id. In other words, Rizos does not refute the plaintiffs' evidence that he alone controlled Vardaris' finances. He contests only the idea that he made a willful decision not to pay the plaintiffs, explaining that he simply lacked the financial resources to do so.

While Rizos' explanation for the delinquent payments may be true, it is irrelevant to the question of his liability under ERISA. There is no financial hardship exception in the statute itself or in either of the CBAs. Once the payments to the benefit funds became due, Rizos was contractually obligated to utilize his power over Vardaris' bank account to make the required payments. The fact that the company's financial situation did not allow him to do so does not relieve him of his contractual obligation. Therefore, while Rizos asserts that there is a disagreement between the parties over whether the payments were missed "willfully," such a dispute does not create a "genuine issue for trial" and Rizos may be found liable for the unpaid contributions as a matter of law.

In sum, any unpaid money owed to the plaintiffs are "plan assets" by the terms of the CBAs, and defendant Rizos exercised a level of control over those assets sufficient to make him a plan fiduciary under ERISA. Plaintiffs' motion for summary judgment is granted with respect to their claims against Elias Rizos in his individual capacity.

## DAMAGES

ERISA entitles the plaintiff benefit funds to any unpaid contributions, interest on those

10

contributions, an amount equal to the greater of 1) interest on the unpaid contributions or 2) liquidated damages provided under the CBA, reasonable attorney's fees, costs, and such other legal or equitable relief that the court deems appropriate. 29 U.S.C. § 1132(g)(2). The parties dispute the extent of these damages and the appropriate methodology to be used in calculating them. I respectfully refer the determination of the appropriate damages to the Honorable Magistrate Judge Robert Levy to issue a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

## CONCLUSION

The plaintiff benefit funds' motions for summary judgment against Vardaris Tech Inc. and Elias Rizos in his individual capacity are granted. I respectfully refer the determination of the appropriate damages to be paid to the benefit funds and their attorneys to the Honorable Magistrate Judge Robert Levy to issue a report and recommendation.

SO ORDERED.

                                                  s/Allyne R. Ross

                                                  Allyne R. Ross
                                                  United States District Judge

Dated: October 22, 2015
Brooklyn, New York